```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH J. HUTTON,

                      Plaintiff,            05-CV-6445CJS

v.                                           DECISION
                                             and ORDER
JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

_____
```

INTRODUCTION

Plaintiff, Kenneth J. Hutton ("Hutton") filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("Disability"), and Supplemental Security Insurance ("SSI").  On August 10, 2006 the Commissioner moved for summary judgment.  On August 11, 2006, plaintiff cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the reasons that follow, this Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, plaintiff's motion for judgment on the pleadings is denied and defendant's motion for judgment on the pleadings is granted.

BACKGROUND

Plaintiff is a 54 year old man with a college and master's degrees. (Tr. 48)  He alleges that he has been disabled since May 19, 1999 because of chronic depression, tense muscles, insomnia, irritability, anxiety, lack of concentration and post traumatic stress disorder. (Tr. 146)  On August 1, 2001, plaintiff filed an application for SSI benefits. (Tr. 38-40, 133-135)  The application was denied by Notice dated November 9, 2001. (Tr. 80, 94-97)  Plaintiff appealed this decision and a hearing was held on September 10, 2003.  By decision dated December 11, 2003 the ALJ found that plaintiff was not disabled because he did not have a medically severe impairment. (Tr. 81-90)  Plaintiff appealed the December 11, 2003 decision and on March 18, 2004, the Appeals Council ordered a remand to the ALJ because he failed to properly evaluate the degree of functional limitations for each area and the severity of plaintiff's mental impairment, failed to adequately evaluate subjective complaints or their impact on residual functional capacity, failed to receive vocational expert evidence regarding the impact of plaintiff's non-exertional limitations and failed to evaluate treating source opinions. (Tr. 113-114)  A hearing was held on November 10, 2004 at which plaintiff appeared represented by an attorney and a vocational expert testified. (43-79)  By decision dated April 8, 2005, the Administrative Law Judge ("ALJ") found Hutton was not disabled because he had the


residual functional capacity to perform a significant range of light work. (Tr. 13-25)  Plaintiff requested review by the Appeals Council and the decision of the ALJ became final when the Appeals Council denied review on June 27, 2005. (Tr. 9-11).  Plaintiff commenced this action on August 29, 2005.

A.   Medical Background

Plaintiff sought medical care from Dr. Carl Sahler on May 20, 1999 for depression. (Tr. 212)  Hutton was having difficulty sleeping and having feelings of sadness.  He was unable to focus and make decisions. (Tr. 212) Hutton was a recovering alcoholic who continued to attend AA meetings.  Dr. Sahler prescribed Paxil. (Tr. 212)

Two weeks after starting Paxil, plaintiff was examined by Dr. Sahler who noted that the Paxil caused plaintiff to have increased anxiety. (Tr. 212)  Dr. Sahler changed the prescription to Serzone. (Tr. 212)  During a follow up appointment in July, 1999, plaintiff showed improvement in that he was sleeping at night and his outlook on life was better. (Tr. 210)  Plaintiff was again treated on September 1, 1999 by Dr. Sahler. (Tr. 208)  Hutton was "doing somewhat better" as he was taking Serzone but he was on medical leave from his teaching position and had "extreme anxiety" about returning to this position. (Tr. 208)  On November 9, 1999, Dr. Sahler switched plaintiff's prescription for depression from Serzone to Celexa. (Tr. 209)

An examination on January 3, 2000 by Dr. Sahler showed plaintiff to be "depressed appearing" but without thought disorder nor suicidal tendencies. (Tr. 209)

Plaintiff was treated by counselor Thomas Paul from February 2000 through January, 2001 with a focus on "family origin issues" on his depression. (Tr.229) Plaintiff participated in one 14 week course of group psychotherapy. (Tr. 229)

On September 12, 2000, plaintiff began treatment with Dr. Zbigniew Lukawski with complaints of aches and pains in his calves, predominantly at night. (Tr. 220) Dr. Lukawski noted that plaintiff discontinued taking Celexa three weeks prior to this appointment. Dr. Lukawski concluded that plaintiff had a normal physical examination wihtout evidence of neuropathy. (Tr. 220) He advised plaintiff to take Tylenol for pain and prescribed Quinine sulfate to control cramps in his calves. (Tr. 220)

On December 1, 2000, plaintiff presented to Dr. Lukawski with complaints of depressed mood. Hutton had been taking Celexa for the past few weeks but reported that the medication did not work and he had side effects of dryness of the mouth and difficulty passing urine. (Tr. 218) He was diagnosed with major depression, Celexa was discontinued and Zoloft prescribed. (Tr. 218) A follow up appointment on December 21, 2000 showed that plaintiff's depression was "well controlled" with Zoloft without side effects. (Tr. 217)

On February 5, 2001, plaintiff was examined by Dr. Lukawski examined plaintiff for lower back pain and some stiffness in the lower back. (Tr. 216)  Plaintiff also complained of increased depression symptoms.  Dr. Lukawski presribed Motrin and increased the dosage of Zoloft. (Tr. 216)  The follow up visit on February 27, 2001, showed that plaintiff had improved symptoms of depression.  X-rays of the thoracic spine showed no significant degenerative or arthritic changes in the spine but degenerative spurring visible at the L2-L3 level as well as L2-L3 spondylolisthesis and osteopenia. (Tr. 215) Plaintiff was advised to take Motrin and exercise to strengthen his muscles.

Dr. William Lewek, a psychiatrist, examined plaintiff on March 4, 2001 and diagnosed him with major depression and anxiety disorder. (Tr. 244)  Dr. Lewek noted that plaintiff was taking Zoloft and Wellbutrin. (Tr. 246)  He noted that plaintiff had a "robust response" to the medications but became "somewhat hyperactive." (Tr. 246)  Dr. Lewek noted that plaintiff had difficulty focusing but that he was oriented to a person, place and time and that his memory was not impaired. (Tr. 250)  Dr. Lewek also noted that plaintiff had difficulty with procrastination and had chronic anxiety. (Tr. 253)

On May 22, 2001, plaintiff presented to Dr. Lukawski with complaints of anorgasmia. (Tr. 214) Dr. Lukawski opined that it was caused by Zoloft but that he needed to take it for his depression.

5

He recommended that plaintiff discuss alternate treatments with his psychiatrist. (Tr. 214)

On October 4, 2001, Dr. John Thomassen examined plaintiff as an independent medical exam. (Tr. 231-235) Dr. Thomassen reported that plaintiff had been sad for unknown reasons and has low energy level. (Tr. 232) Dr. Thomassen found that plaintiff should be able to follow simple directions and should be able to perform rote tasks. He would likely be able to do complex tasks consistent with his skill level but would have some problems relating with co-workers and coping with stress. (Tr. 234) Dr. Thomassen found that plaintiff had "mild symptoms of depression and anxiety". (Tr. 234)

Dr. George Alexis Sirotenko also examined plaintiff as an independent medical examiner on October 4, 2001. (Tr. 238-241) He noted that plaintiff had depression since May, 1999, post-traumatic stress disorder diagnosed 2000 and anxiety since 1999. Also, plaintiff complained of a pulling, spasm like pain in the upper and lower back present since May of 1999. (Tr. 238) Dr. Sirotenko found no physical limitations. (Tr. 241)

Hutton's therapist, Kathryn DeBruin, worked with plaintiff from January, 2003 through September 2003 at the Clifton Springs Hospital and Clinic Outpatient Mental Health Clinic. (Tr. 296-299) Ms. DeBruin found that plaintiff had a depressed mood but that he was becoming more aware of his symptoms and admitting manic episodes. (Tr. 297) She found plaintiff to be "fair" at dealing

with the public, using judgment, relating to co-workers and interacting with supervisors. (Tr. 298) She found him "seriously limited" in dealing with stress. (Tr. 298)

Dr. Lukawski completed a "Mental Impairment Ealuation" dated September 18, 2003 in which he found plaintiff to be "seriously limited" in his ability to use judgment and having poor or no ability to deal with the public, interact with supervisors, maintain attention, and deal with work stress. (Tr. 290)  He continued to treat plaintiff through 2004.  Medical notes dated August 17, 2004 indicate that plaintiff continued to take Zoloft and Wellbutrin. (Tr. 306)

B.    Non-Medical Background

Plaintiff worked as a teacher from May, 1984 to May, 1999.  He worked for 16 years as a high school social studies teacher. (Tr. 48, 147, 161)  Hutton has a masters degree in education. (Tr. 48)  Hutton took a year sick leave through June, 2000 due to "increasing stress, irritability, difficulty completing tasks, feelings of inadequacy and lack of administrative support." (Tr. 170)  He spent his days reading, listening to the Yankees and visiting with friends about once a week. (Tr. 168) Hutton can drive a car and handles payment of bills. (Tr. 169)

A vocational expert, Dr. Peter Manzi, testified at the hearing. (Tr. 71-78) Dr. Manzi opined that plaintiff could no longer perform his past work as a teacher because of the

requirements for interaction with the public and co-workers. (Tr. 72-73) Dr. Manzi did find that there were other jobs that plaintiff could perform. For example, he found that plaintiff could perform the tasks necessary to be an assembler of small products and an assembler of hospital products. (Tr. 73) Plaintiff could also do sedentary work such as calculating machine operator. (Tr. 74) With the hypothetical that plaintiff could only lift or carry 10 pounds occasionally and sit or stand no more than 30 minutes at a time and not be able to maintain attention for extended periods of time, Dr. Manzi opined that there would be no jobs available. (Tr. 75)

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. <u>Rivera v. Harris</u>, 623 F.2d 212, 216 (2d Cir. 1980). A disability is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
> 
> 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the Act unless it is:
> 
> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B).  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

In evaluating disability claims, the Commissioner is required to use the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity.  Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work.  Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission.  If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled.  If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work.  If he is not, the fifth and final inquiry is whether the claimant can perform any other work.  The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996).

Here, the ALJ followed the five step procedure.  In his decision dated April 8, 2005, the ALJ found that plaintiff (1) had not engaged in substantial gainful activity since the onset date of

May 19, 1999; (2)suffers from degenerative joint disease and major depressive disorder; (3) did not have an impairment that meets or equals one of the listed impairments listed in Appendix 1, subpart P, Regulation No. 4; (4) did not have the residual functional capacity to perform his past relevant work; and (5) has the residual functional capacity to perform a significant range or light work. (Tr. 16-25)

The ALJ noted that plaintiff's complaints were not consistent with the medical evidence which indicated that the depression symptoms were controlled. (Tr. 21)  While plaintiff testified that he was not able to focus and concentrate, the consultative examiner found no evidence of this difficulty. (Tr. 21)  After concluding that the plaintiff could not perform his past relevant work, the ALJ looked to the Medical Vocational Guidelines as a framework as well as the testimony of the vocational expert to find that plaintiff was capable of making vocational adjustment to other work. (Tr. 22)

Plaintiff argues that the ALJ improperly relied on the opinion of the non-treating physician Dr. Thomassen giving his opinion greater weight than that of Dr. Lewek and relying on excerpts from Dr. Lukawski's notes that plaintiff asserts were taken out of context.  In fact, the medical notes are clear that Dr. Thomassen could not verify plaintiff's claim that he could not concentrate and focus, and, therefore, was unable to pursue his job as a teacher. (Tr. 233)  Dr. Thomassen said that plaintiff's thought processes

were intact and that he found no evidence of thought disorder. Plaintiff's memory, attention and concentration were intact and his cognitive functioning was average with good insight and judgment. (Tr. 233)  Plaintiff was able to care for himself, handle finances, and drive a car.

Dr. Thomassen's findings are consistent with the medical notes of plaintiff's treating physician, Dr. Lukawski, that indicated that plaintiff's depression was controlled by his medications.  While Dr. Lewek did find that plaintiff had some limitation with prolonged concentration and anxiety, he also conceded that plaintiff had a "robust response" to the medications. (Tr. 246)  Dr. Lewek found that plaintiff was oriented to a person, place and time and that his memory was not impaired. (Tr. 250)  The medical evidence does not support plaintiff's allegations of mental and physical disability.

<u>CONCLUSION</u>

This Court finds that there is substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted and the Complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         November 7, 2006

11